UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-5258
(Civ. A. No. 23-2172)

AMERICAN FIRST LEGAL FOUNDATION,                    Appellant,

   v.

FEDERAL BUREAU OF INVESTIGATION, et al.,            Appellees.

## APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

Appellees, the Federal Bureau of Investigation ("FBI") and the Department of Justice ("Department"), respectfully move for summary affirmance of the Honorable Beryl A. Howell's October 29, 2024, Memorandum Opinion (R.23) and Order (R.22), granting the agencies' motion for summary judgment in this Freedom of Information Act, ("FOIA") case. The district court held that the FBI properly withheld information pursuant to FOIA Exemptions 6 and 7(C) in responding to a FOIA request seeking records concerning the FBI's background investigation of Alejandro Mayorkas in connection with the Senate confirmation process for the position of the Secretary of Homeland Security.

The declarations support the withholdings of information under this Court's precedents, and the merits of the appeal are "so clear as to make summary affirmance proper," *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980), such that "no benefit will be gained from further briefing and argument of the issues presented," *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297–98 (D.C. Cir. 1987). Therefore, the district court's judgment should be summarily affirmed.

## BACKGROUND

Appellant the America First Legal Foundation ("America First"), filed its Complaint on July 26, 2023, Compl. (R.1), against the FBI and the Department under FOIA "to uncover the FBI background investigations records that may reveal the truth about Secretary Mayorkas's fitness to hold public office." *Id.* ¶ 3.

## I. FOIA Request and FBI's Response

On January 6, 2023, America First made a FOIA request with the FBI, in which it sought the records of "the FBI background investigation, Form SF-86, and any supporting security clearance documentation, including waiver forms [completed] by Alejandro Mayorkas or his designees for the purpose of allowing the FBI to conduct a background

investigation as part of his nomination[s] for Secretary of Homeland Security, Deputy Secretary of Homeland Security, Director of the United States Citizenship and Immigration Service, and the United States Attorney for the Central District of California and as produced to or shared with Senate Homeland Security and Governmental Affairs majority staff or any other congressional staff".". FOIA Request (R.1-1)." On January 13, 2023, the FBI informed America First that it had completed its search for records responsive to the request and that access was categorically denied pursuant to FOIA Exemptions 6 and 7(C). By way of explanation, the FBI advised America First that the FBI found that America First had not demonstrated the public's interest in disclosure outweighed the personal privacy interests of the individual's privacy interests, and that, although the FBI acknowledged the existence of the records, the records were exempt from disclosure as processing the records would constitute an unwarranted invasion of personal privacy. Decl. of Michael G. Seidel ("Seidel Decl.") (R.18-1) ¶ 6. America First filed its Complaint on July 26, 2023. Compl. (R.1).

During litigation, the FBI advised America First that it had reviewed the responsive records for applicable FOIA Exemptions and for

segregability. Seidel Decl. (R.18-1) ¶ 11. More specifically, the FBI told America First in October 2024 that it had identified 115 pages of segregable, public source information, which it released in part. *Id*. ¶ 11. The FBI also advised America First that all other responsive material was categorically exempt from disclosure pursuant to FOIA Exemptions 6 and 7(C), and underlying FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E). *Id*.

## II.  Procedural Background

On July 26, 2024, the FBI moved for summary judgment (R.17) and Errata (R.18), which America First opposed (R.19). Briefing was completed on September 4, 2024. *See* Defs' Reply (R. 21). On October 29, 2024, the district court granted Defendants' motion for summary judgment and entered a final order. *See* Oct. 29. 2024, Order (R.22); Oct. 29. 2024, Mem. Op. (R.23). This appeal followed.

## ARGUMENT

## I.  The District Court Correctly Concluded that the FBI Conducted an Adequate Search.

In response to America First's January 6, 2023, FOIA request for the FBI's background investigation of Alejandro Mayorkas, the FBI conducted an adequate search under FOIA when it searched its Central

Records System, given the comprehensive nature of the information contained in the system. In support of the FBI's motion for summary judgment, the FBI submitted a sixty-one-page affidavit by the FBI's Section Chief of the Record/Information Dissemination Section, Information Management Division, which details Mr. Seidel's familiarity with the procedures followed by the FBI in responding to FOIA requests (Seidel Decl. (R.18-1) ¶ 3; (b) Mr. Seidel's specific knowledge of how the FBI handled America First's FOIA request (*id.*); (c) how the FBI's Central Records System is organized and the comprehensive set of records, information, and data it contains (*id.* ¶¶ 12-15); (d) the FBI's basis for believing that the records sought would be stored in the Central Records System and accessed via a search (*see id.* ¶¶ 12, 19); (e) how the FBI searched the Central Records System (*id.* ¶ 20); and (f) that the FBI identified responsive records (*see id.*). *See Evans v. Fed. Bureau of Prisons*, 951 F. 3d 578, 584 (D.C. Cir. 2020) ("[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by

evidence of agency bad faith." (alteration in original; quoting *Gallant v. Nat'l Lab. Rel. Bd.*, 26 F.3d 168, 181 (D.C. Cir. 1994))).

Due to the nature of America First's request for records pertaining to the FBI's background investigation of Alejandro Mayorkas, the FBI conducted a search of its Central Record System for main entries, or entries created for each individual that is the subject or focus of an investigation, using the term "Alejandro Mayorkas" with a search cut-off date of September 22, 2023, the date of the FBI's initial search for records. *Id.* ¶ 20. Based on the language of America First's request for the FBI background investigation of Alejandro Mayorkas, Form SF-86, and any supporting security clearance documentation completed by Mr. Mayorkas, the FBI correctly relied on the "four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996). As a result of its search, the FBI located responsive records and Mr. Seidel averred that "there is no indication from the [Central Records System] search efforts that responsive records would reside in any other FBI system or location." Seidel Decl. (R.18-1) ¶¶ 20-21.

America First did not challenge FBI's search terms; rather, America First challenged the FBI's search on two bases: (1) that the FBI did not search any email accounts "that would potentially contain records responsive to the request," (Pl.'s Opp'n (R.19) at 5), including email accounts of the Office of Congressional affairs, *id*. and (2) that there was no indication that the FBI looked for a set of records spanning sessions of Congress other than the most recent session of Congress. *Id.* As to the first argument, the district court reasonably concluded that America First's request at issue was only for "records and versions of the FBI background investigation, Form SF-86 and any supporting security clearance documentation . . . as produced to or shared with Senate Homeland Security and Governmental Affairs majority staff or any other congressional staff" related to Secretary Mayorkas' four nominations to government positions." Oct. 24, 2024, Mem. Op. (R. 23) at 11 (quoting Defs.' Stmt. of Material Facts ¶ 6). As recognized by the district court, America First's FOIA request sought only documents and versions thereof, of FBI reports, security clearance forms or documentation related to the specific cabinet secretary's nominations for federal government positions, that were produced to or shared with Congress—

*not emails* with Congress.  *See id*. (emphasis in original).  In any event, however, the FBI's search uncovered emails between FBI personnel, between FBI personnel and private citizens or corporations, between FBI personnel and other government agency personnel, and between FBI personnel and state and local law enforcement agencies.  *See* Seidel Decl. (R.18-1) ¶¶ 12, 21, 46.  Given America First's FOIA request and the FBI's explanation of its search, the district court reasonably concluded that the FBI's search was adequate.  *See* Oct. 24, 2024, Mem. Op. (R.23) at 12.

As to America First's second argument, the district court reasonably concluded that the argument speculated that the FBI searched for records only as to the cabinet secretary's nomination for his current position.  *Id*. at 13.  The FBI's declarant, however, explained that the FBI ran a search in its database for "Alejandro Mayorkas" without any start date and with an end date of September 22, 2023, when the United States Senate had already confirmed Secretary Mayorkas' nomination.  Seidel Decl. (R.18-1) ¶ 20.  As the district court correctly found, the FBI's search was not contingent on sessions of Congress and the FBI search would have necessarily captured information from the inception of "Alejandro Mayorkas" in the FBI's database.  *See* Oct. 24,

2024, Mem. Op. (R.23) (citing Seidel Decl. (R.18-1) ¶¶ 13-15, 20-21). On these bases, the Court should affirm the district court's finding that the FBI conducted an adequate search. *See Watkins L. & Advoc., PLLC v. Dep't of Just.*, 78 F.4th 436, 444 (D.C. Cir. 2023) (affirming summary judgment regarding the adequacy of defendant's search because the declarations described with particularity the files that were searched, the manner of the search, and the results of the search and demonstrated that the agency made a good faith effort to conduct a search using methods which could have been reasonably expected to produce the information requested).

## II. FBI's Categorically Justified Withholdings Under Exemptions 6 and 7(C) Are Appropriate.

FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). In this case, the FBI appropriately withheld information that is categorically exempt from disclosure under FOIA Exemptions 6 and 7(C), and there was no need for the district court to address any of the other exemptions asserted in the alternative because Exemptions 6 and 7(C) covered all the

withheld information. *See Roth v. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (where "all information that would fall within the scope of [one asserted exemption] would also be immune from disclosure under [another asserted exemption]", there is "no need" to consider both). Because the record demonstrates "logical or plausible" justifications for withholding under Exemptions 6 and 7(C), the district court's grant of the FBI's summary judgment motion is correct. *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

In appropriate cases, FOIA exemptions can be applied categorically. The Supreme Court has explained that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776, 780 (1989); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205–06 (D.C. Cir. 1991).

In this case, the FBI considered the responsive information in three categories: (1) Evidentiary and Investigative Materials; (2) Administrative Materials; and (3) Public Source Materials. Seidel Decl. (R.18-1) ¶ 45. A chart in the Seidel Declaration (*id.* at 26-28)

describes various types of records within the background investigation file, along with the corresponding functional category.  As an example, electronic mail messages (or emails), are documents found within the background investigation file, and consist of emails between FBI personnel, between FBI personnel and private citizens or corporations, between FBI personnel and other government agency personnel, or between FBI personnel and state and local law enforcement agencies. *See id*.  Emails fit within both functional categories—Evidentiary and Investigative Materials and Administrative Materials.  *See id*.  The record clearly demonstrates that Mayorkas background investigation file is categorically exempt from disclosure under FOIA Exemptions 6 and 7(C), and the Court should summarily affirm the district court's grant of the FBI's motion for summary judgment.

### A. The Withholdings Pursuant to Exemption 7(C) Are Appropriate.

The FBI correctly categorically withheld exempted information in the background investigation files under Exemptions 7(C).  Exemption 7(C) exempts "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(7)(C). In applying Exemption 7(C), a court should "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. Dep't of Just.*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Courts recognize the considerable stigma inherent in being associated with law enforcement proceedings and accordingly "do[] not require a balance tilted emphatically in favor of disclosure" when reviewing a claimed 7(C) exemption. *Bast v. Dep't of Just.,* 665 F.2d 1251, 1254 (D.C. Cir. 1981). A court need only consider the withholdings under Exemption 6 if it concludes that Exemption 7(C) does not apply to any withholdings. *See Reps. Comm.*, 489 U.S. at 762 n.12.

1. Privacy Interests

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes.'" 5 U.S.C. § 552(b)(7). The FBI is the primary investigative agency of the federal government with authority and responsibility to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the

United States and the records at issue were compiled pursuant to the FBI's investigative authority. Seidel Decl. (R.18-1) ¶¶ 34-35. America First did not dispute that the information was compiled for law enforcement purposes, and as such, the first prong of Exemption 7(C)—that the records at issue were compiled for law enforcement purposes—was not in dispute. *See* Oct. 29, 2024, Mem. Op. (R.23) at 18; Pl.'s Opp'n (R.19) at 10-14. Therefore, the only remaining inquiry for the district court to determine whether the FBI's assessment of the privacy interests at stake—including the privacy interests of Mr. Mayorkas and the individuals who supplied the information to the FBI in the background investigations—"tip[s] in a direction that outweighs plaintiff's allegation that the release of documents would shed light on 'serious allegations that that the background check process has become broken and politicized' because 'the FBI has repeatedly violated the Paperwork Reduction Act, the Privacy Act, and the FBI's own Manual of Investigative Operations and Guidelines in its conduct of background investigations.'" *Id*. at 18 (quoting Pl.'s Opp'n (R.19) at 11-12).

Consistent with 7(C), the FBI evaluated the public interest in public disclosure of the information in the file against Mr. Mayorkas'

substantial privacy interests. When a FOIA request implicates personal data on third-party individuals in law enforcement records, "the privacy interest . . . is at its apex." *Reps. Comm.*, 489 U.S. at 780. The background investigation files that the FBI compiled consisted of several types of personal and sensitive information including the interviews of the appointee, his neighbors, references, employers, supervisors, or coworkers; searches and results of government agency database records checks; and medical and financial records detailing every aspect of the past health and financial history of Secretary Mayorkas. *See* Seidel Decl. (R.18-1) ¶ 25. The background investigation file includes a wealth of personally identifiable information, as well as intimate details about the subject of the investigation, his family, personal relationships, and associates. *See id.* ¶ 26. Accordingly, the FBI concluded that public release would cause significant harm to Secretary Mayorkas and other people who cooperated with the background investigation. Seidel Decl. (R.18-1) ¶ 45 (describing the anticipated harms that could reasonably result from disclosure, such as embarrassment, false inferences, degradation of the perception of third parties' personal character, revelation of personal details about Mr. Mayorkas' life that he may not

want publicly disclosed, and potentially harassing inquires directed at third parties.

### 2. Public Interest

The FBI evaluated the public interest articulated by America First. The FBI, in the Seidel Declaration, provided a detailed chart outlining the functional categories and subcategories of responsive documents, types of documents, and description of the documents at a level of detail "that would not undermine Mr. Mayorkas' privacy interests." Oct. 29, 2024, Mem. Op. (R.23) at 19 (quoting Seidel Decl. (R.18-1) ¶¶ 45-46 (noting that this procedure was consistent with the same process approved in a FOIA case seeking law enforcement records in *Bevis v. Dep't of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986))).

Exemption 7(C) recognizes a broad privacy interest in personal information contained in FBI files and the Supreme Court has established a demanding test for overcoming them. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 160 (2004) ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion" of that idea."). Exemption 7(C)'s relevant public interest is "the extent to which disclosure would serve the core purpose of the FOIA,

which is contributing significantly to public understanding of the operations or activities of the government." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F3d 1046, 1051 (D.C. Cir. 2009) (cleaned up). "[I]nformation about private citizens . . . that reveals little or nothing about an agency's own conduct does not serve a relevant public interest under [the] FOIA." *Id.* (internal quotations omitted). "When the subject of [a record] is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." *Reps. Comm.*, 489 U.S. at 780. On these bases, the FBI reasonably considered that America First had failed to provide sufficiently compelling evidence of government misconduct to show how disclosure of this type of information or records would benefit the public's understanding of government operations enough to outweigh Mr. Mayorkas' legitimate and significant privacy interests. *See* Seidel Decl. (R.18-1) ¶ 43; *Martin v. Dep't of Just*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("The Supreme Court has made clear that requests for such third party [law enforcement]

information are strongly disfavored." (citing *Reps. Comm.*, 489 U.S. at 774)).

## B. The Withholdings Pursuant to Exemption 6 Are Appropriate.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."). Here, the records at issue involve the FBI's background investigation of Alejandro Mayorkas, and include interviews of the appointee, his neighbors, references, employers, supervisors, and coworkers, searches and results of government agency database checks, and medical and financial records detailing every aspect of his past health and financial history. Seidel Decl. (R.18-1) ¶ 25. The records in dispute thus fit squarely within "personnel and medical files and similar files" because the background

investigation file includes a wealth of personally identifiable information, as well as intimate details about Mr. Mayorkas, the investigation, his family, personal relationships, and associates. *See id*. ¶ 26.

As to the applicability of Exemption 6, as with the applicability of Exemption 7, courts consider the privacy and public interests at stake, but also weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id*. at 47; *see also Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

1.  <u>Balancing</u>

Against the substantial privacy interests (articulated above) and the public interest in disclosure (also articulated above), the FBI balanced the privacy interests at stake against the public's right to know. More specifically, due to the personal nature of the background

investigation file, the FBI considered Mr. Mayorkas' substantial privacy interest in the personal information on the records the FBI compiled, including information about his private life, and that disclosure of this information would constitute a massive intrusion into his personal privacy. Seidel Decl. (R.18-1) ¶ 41. In addition, at the time of the investigation, Mr. Mayorkas had not become the Secretary of the Department of Homeland Security, and as such, the FBI's background investigation centered on Mr. Mayorkas' private life, prior to his time as Secretary of the Department of Homeland Security. *See id*. ¶ 42. As noted in the Seidel Declaration, on balance, the FBI reasonably determined that the private details of Mr. Mayorkas' life obtained during an authorized background investigation should remain private. *See* Seidel Decl. (R.18-1) ¶ 41; *ACLU v. Dep't of Just.*, 655 F.3d 1, 8 (D.C. Cir. 2011).

The information compiled by the FBI for the Mayorkas background investigation included numerous interviews, searches and results of government agency database records, and medical and financial records detailing every aspect of Mr. Mayorkas' past health and financial history. Seidel Decl. (R.18-1) ¶¶ 25-26. The purpose of the background

investigation was to determine if Mr. Mayorkas was "suitable for . . . high-level national security position[s] and to access law enforcement or classified information." *Id.* ¶ 35. Against this, the FBI considered American First's vague articulation how disclosure of background investigations would benefit the public's understanding of government operations and whether that articulation was enough to outweigh Mr. Mayorkas' privacy interests. Seidel Decl. (R.18-1) ¶¶ 41, 43. America First in its FOIA request suggested only that "the background of the Secretary of Homeland Security is assuredly a matter of actual or alleged Federal Government Activity. *See* FOIA Request (R.1-1) at 7. America First did not articulate a significant public interest that would exceed the gravity of Mr. Mayorkas' own privacy interests and that of third parties who contributed to the background investigation.

Further, America First's assertion without more, that the background investigation documents would reveal the FBI's violations of the Paperwork Reduction Act, the Privacy Act, or its own internal manuals and guidelines in conducting the Mayorkas background investigation (Pl.'s Opp'n (R.19) at 11-12) has not met the demanding standard set forth in *Favish* , 541 U.S. at 174. *Favish* explained that to

obtain private information, the "requester must at a minimum produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* On these bases, the record supports the FBI's categorical withholding of documents under Exemption 6 and 7(C) to protect the privacy interests of the individuals mentioned in the file, and especially Secretary Mayorkas as the subject of the investigation and in the absence of any evidence of wrongdoing by him or anyone associated with the FBI. Because the FBI's conclusion comports with Exemption 6, the Court should uphold it.

*     *     *

**CONCLUSION**

For the foregoing reasons, Appellees respectfully request that this Court grant this Motion for Summary Affirmance and affirm the judgment below.

EDWARD R. MARTIN, JR.
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys

_____/s/ Dedra S. Curteman_____
DEDRA S. CURTEMAN
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2550
Dedra.Curteman@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF COMPLIANCE

I hereby certify that foregoing complies with Federal Rule of Appellate Procedure 27(d)(2)(C), in that it contains 3,906 words, is in fourteen-point font and utilizes Century Schoolbook typeface.

*/s/ Dedra S. Curteman*
DEDRA S. CURTEMAN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this 29th day of January 2025, the foregoing has been served on Appellant through the Court's CM/ECF system.

*/s/ Dedra S. Curteman*
DEDRA S. CURTEMAN
Assistant United States Attorney
