# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN FIRST LEGAL FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al.*,<br><br>Defendants. | Civil Action No. 23-2172 (BAH)<br><br>Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

American First Legal Foundation ("plaintiff") filed this lawsuit against the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ") (collectively "defendants"), challenging defendants' compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in responding to a request for all records of the FBI's background investigations into U.S. Secretary of Homeland Security Alejandro Mayorkas ("Secretary Mayorkas") prior to him holding federal government positions, Compl. ¶ 9, ECF No. 1. After producing 115 pages of responsive records and withholding certain categories of documents under a constellation of exemptions, defendants now move for summary judgment, under Federal Rule of Civil Procedure 56, Defs.' Mot. for Summ. J., ECF No. 18, on grounds that they conducted an adequate search and reasonably withheld the information under FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E), *see* 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 18.[1] For the reasons set out below, defendants' motion is granted.

---

[1]    Defendants' original motion for summary judgment was docketed as ECF No. 17. Defendants filed an Errata, ECF No. 18, that is cited herein.

# I.  BACKGROUND

Relevant factual and procedural background is summarized below.

## A.  Plaintiff's FOIA Request

On November 23, 2020, then President-Elect, Joseph R. Biden Jr., designated an official from the Office of the president-Elect Counsel's Office to request a background investigation of Alejandro Mayorkas, the current Secretary of Homeland Security, which initiated a Level I FBI background investigation into Mayorkas. Defs.' Statement of Undisputed Material Facts ("Defs.' SUMF") at ¶ 1, ECF No. 18-9.[2]  The FBI compiled a background investigation file consisting of several types of information including interviews of the appointee, his neighbors, references, and employers/supervisors/coworkers.  *Id.* ¶ 2.  The background investigation also included searches and results of government agency database records checks and medical and financial records detailing every aspect of the past health and financial history of Mayorkas.  *Id.*  "The background investigation file includes a wealth of personally identifiable information, as well as intimate details about [Secretary Mayorkas], his family, personal relationships, and associates."  *Id.* ¶ 80.

On January 6, 2023, plaintiff submitted a FOIA request to the FBI seeking background investigation records about Mayorkas.  *Id.* ¶ 6.  Specifically, plaintiff requested "[a]ll records and versions of the FBI background investigation, Form SF-86 and any supporting security clearance documentation, including waiver forms, that were both completed, regardless of completion date(s), by Alejandro Mayorkas or his designees for the purposes of allowing the FBI to conduct a background investigation as part of his nomination for Secretary of Homeland Security and as produced to or shared with Senate Homeland Security and Governmental Affairs

---

[2]    Plaintiff disputes twelve facts described in defendants' SUMF, *see* Pl.'s Statement of Disputed Material Facts ("Pl.'s SDMF") ¶¶ 66-72, 74, 76, 82, 90, 141, ECF No. 19-1, only three of which, relating to defendants' segregability obligations, *see* Pl.'s SDMF 74, 90, 141, are relevant to resolution of the pending motion and are addressed *infra* in Part III.C. n.9.

majority staff or any other congressional staff." *Id.* ¶ 6. Plaintiff sought the same swath of records for his nominations for three prior positions, including the positions of Deputy Secretary of Homeland Security, Director of the United States Citizenship and Immigration Service ("USCIS"), and United States Attorney for the Central District of California. *Id.*

The FBI informed plaintiff a week later, by letter dated January 13, 2023, that the "FBI ha[d] completed its search" for responsive records "on third party individual(s)" and the request was "categorically denied pursuant to FOIA exemptions (b)(6) and (b)(7)(C)," explaining that plaintiff has "not sufficiently demonstrated that the public's interest in disclosure (relating to the operations and activities of the government) outweigh the personal privacy interests of these individual(s)." Defs.' Mot., Attach. 1, Decl. of Michael G. Seidel ("Seidel Decl."), FBI's Section Chief of the Record/Information Dissemination Section, Information Management Division ("FBI's Section Chief"), ECF No. 18-1, Ex. B, Letter from Michael G. Seidel, FBI's Section Chief, to Michael Ding (Jan. 13, 2023) at 1, ECF No. 18-3. Following plaintiff's appeal of this denial and affirmance of the denial by DOJ's Office of Information Policy, on June 16, 2023, Defs.' SUMF ¶¶ 8-9, plaintiff filed the instant action on July 26, 2023, *id.* ¶ 10.

### B.    Pending Litigation

After the filing of this lawsuit, the parties submitted five joint status reports on the progress of the FBI's response to plaintiff's FOIA request. Specifically, by October, 2023, defendants had completed a search for responsive records, *see* parties' Jt. Status Report ("JSR") at 1, ECF No. 11, and by December, 2023, defendants reported that approximately 2,168 pages of potentially responsive records had been identified, *see* Parties' JSRs at 1, ECF Nos. 12, 13. Defendants further advised that the FBI had "determined that a categorical denial  of FOIA Exemptions (b)(6) and (7)(C) is appropriate." Parties' JSR at 1, ECF No. 13.

1.      *The FBI's Search*

To identify potentially responsive material, the FBI searched its Central Records System ("CRS").  Seidel Decl. ¶ 12.  The CRS contains extensive information, consisting of applicant, investigative, intelligence, personnel, administrative and general files compiled and maintained by the FBI.  *Id.* ¶ 13.  The database spans the entire FBI organization, encompassing the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide.  *Id.*  The general indices to the CRS are similar to a digital version of a library card catalog, and FBI personnel index information in the CRS by individual, organization, or activity.  *Id.* ¶ 15.  The entries in the general indices fall into either a main index entry, created for each individual that is a subject or focus of an investigation, or reference index entry, created for an individual associated with an investigation, but who is not the main subject or focus of the investigation.  *Id.*  To access the indices, FBI personnel utilize Sentinel—the FBI's case management system.  *Id.* ¶ 16.[3]

Sentinel's index search methodology and function allow FBI personnel to query the CRS for indexed subjects in case files and to locate potentially responsive records.  *Id.* ¶ 17.  Then an analyst reviews potentially responsive records against the specific parameters of individual requests.  *Id.* ¶ 18.  Based upon his personal review of plaintiff's request and deep familiarity and expertise with FBI records retention and accessibility, the FBI declarant determined that searching records available in CRS using Sentinel represented the most reasonable means for the FBI to locate records potentially responsive to plaintiff's FOIA request given the comprehensive, agency-wide set of indexed data on a broad array of investigative subjects that consist of millions of searchable records.  *Id.* ¶¶ 2-3, 19, 21.  Using Sentinel, the FBI searched main entries for

---

[3]      Prior to Sentinel, which went live on July 1, 2012, the FBI relied on a case management system known as Automated Case Support ("ACS").  Seidel Decl. ¶ 16.  ACS was decommissioned, on August 1, 2018, and the ACS indexed data was migrated into Sentinel, where these indices are accessible and searchable through Sentinel's search functions.  *Id.*

"Alejandro Mayorkas" with a search cut-off date of September 22, 2023, which was the date of the FBI's initial search for records. *Id.* ¶ 20. The search produced responsive records. *Id.*

## 2. *The FBI's Categorization of Records*

The responsive documents were organized into three functional categories. The first functional category ("FC 1") consists of "copies of records or evidence, analyses of evidence, and derivative communications discussing or incorporating collected evidence." *Id.* ¶ 45.[4] FC 1 was divided into two subcategories: (1) information provided by interview subjects and (2) information concerning physical or documentary evidence. *Id.* The FBI's declarant, who was "[s]pecifically . . . aware of the FBI's handling of Plaintiff's FOIA request" and attested based "upon [his] personal knowledge" and "information provided to [him] in [his] official capacity", *id.* ¶ 3, describes in detail each subcategory, identifying the types of information captured within the subcategory as well as the harms that could follow from the disclosure of the information. *Id.* ¶ 45.

The second functional category ("FC 2") consists of "items such as case captions, serial numbers, identities of FBI field offices, dates of investigations, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate FBI and DOJ guidelines." *Id.* FC 2 was then subcategorized into three parts: (1) reporting communications, (2) miscellaneous administrative documents, and (3) administrative instructions. Like FC 1's subcategories, the FBI's declarant described each of FC 2's subcategories and the harms that could occur if the information is revealed and further detailed in a chart the eighteen types of files or documents that exist within the background investigation

---

[4] Defendants defined "derivative communication" as a record that "describes, verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation. Other derivative communications report this information to other FBI field offices, other law enforcement agencies, or other Federal agencies, either to advise them about the progress of the investigation, or to elicit their assistance in handling investigative leads." Seidel Decl. ¶ 45.

records responsive to plaintiff's FOIA request, a description of each, and identified FC 1, FC 2, or both that the file or document fell within. *Id.* ¶¶ 45-46. The specific types of records located within the background investigatory file include: emails, FD-302s, electronic communications/FD-1057s, FD-340/1A envelops and enclosures, miscellaneous administrative documents, FBI memoranda and letters correspondence, other evidentiary documents, FBI records checks, memorandums, FD-1036 Sentinel import forms, FBI investigative reports, FBI computer printouts, FBI investigative inserts, other investigative documents, SF-86, documents implementing sensitive investigative techniques, collected documentation, and FD-240. *Id.* ¶ 46.

The third and final functional category ("FC 3") consists of public-source materials such as articles published in newspapers, magazines, or other periodicals as well as other public sources, including online materials, court transcripts, criminal affidavits, and other court filings. *Id.* ¶ 47.

### 3. *Released Documents and Claimed Exemptions*

Within FC 3, the FBI identified 115 pages of segregable, public source information that were released to plaintiff, *id.* ¶ 11, with four pages partially redacted to protect the name of an FBI Special Agent, under Exemptions 6 and 7(C), *id.* ¶ 48.[5] The FBI withheld all other responsive material categorized under FC 1 and FC 2 as categorically exempt from disclosure under FOIA Exemptions 5, 6 and 7(C). *Id.* ¶¶ 23, 44-48. Additionally, the FBI, pursuant to *Maydak v. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000) (holding that an agency must assert all FOIA exemptions at once in the original court proceeding), asserted FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E) as additional grounds for withholding the records. *Id.* ¶¶ 49-109.

---

[5]     Plaintiff lodges no objection to the FBI's decision to withhold this redacted information, pursuant to Exemptions 6 and 7(C).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 entitles a party to "summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* FED. R. CIV. P. 56(a).  In the context of a FOIA dispute, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. U.S. Dep't of Justice*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734-35 (D.C. Cir. 2017) (explaining that summary judgment may be granted based on agency affidavits "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith" (citation omitted)); *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))). Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA is intended "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. U.S. Army ("DiBacco I")*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  To find the appropriate balance between the public's interest in

governmental transparency and "legitimate governmental and private interests [that] could be harmed by release of certain types of information," *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 913 F.3d 1106, 1108 (D.C. Cir. 2019) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)), Congress created nine exemptions in FOIA, set forth in 5 U.S.C. § 552(b), which "are 'explicitly made exclusive' and must be 'narrowly construed,'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation omitted) (first quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973); and then quoting *Abramson*, 456 U.S. at 630).

FOIA's enforcement mechanism authorizes federal courts to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). District courts must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). "FOIA places the burden 'on the agency to sustain its action,' and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019) (citation omitted) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

"'An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions,' typically through affidavit or declaration." *DiBacco v. U.S. Dep't of the Army ("DiBacco II")*, 926 F.3d 827, 834 (D.C. Cir. 2019) (quoting *DiBacco I*, 795 F.3d at 195). "Summary judgment is warranted based on the agency's affidavit if it 'describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith.'"

*Id.* (quoting *DiBacco I*, 795 F.3d at 196). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).

## III. DISCUSSION

Defendants seek summary judgment, under Federal Rule of Civil Procedure 56, Defs.' Mot. at 1, asserting that they conducted an adequate search and reasonably withheld the information categorically under FOIA Exemptions 5, 6, and 7(C), Defs.' Mem. at 9-22. Should those exemptions not permit withholding of the records *in toto*, defendants further invoke Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E), to withhold the documents. *Id.* at 22-37. Plaintiff counters that defendants, first, failed to conduct an adequate search for responsive documents and, second, improperly withheld documents categorically, which made challenging any individual exemptions difficult because defendants declined to produce a *Vaughn* index. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 5-15, ECF No. 19.

As detailed below, defendants conducted an adequate search and properly invoked Exemptions 6 and 7(C) to withhold the documents categorically.[6]

### A. Defendants' Search Was Adequate.

The adequacy of an agency's search for documents responsive to a FOIA request "is determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Kowal v. U.S. Dep't of Justice*, 107 F.4th 1018, 1027 (D.C. Cir. 2024) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011)). Indeed, only the search procedure, not the results, must be adequate. *See id.* "An

---

[6] Due to this conclusion, consideration of application of other FOIA exemptions relied upon by defendants is not necessary.

agency fulfills its obligations under FOIA . . . 'if it can demonstrate beyond material doubt that

its search was reasonably calculated to uncover all relevant documents." *Canning v. U.S. Dep't*

*of State*, 346 F. Supp. 3d 1, 13 (D.D.C. 2018) (internal quotation marks omitted) (quoting

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)); *see also Morley v.*

*CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007). To obtain summary judgment, an agency can

"submit[] a reasonably detailed affidavit" that "set[s] forth the search terms and the type of

search performed, and averring that all files likely to contain responsive materials . . . were

searched." *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)

(alteration and internal quotation marks omitted) (quoting *Oglesby v. U.S. Dep't of the Army*, 920

F.2d 57, 68 (D.C. Cir. 1990)). The agency affidavits, moreover, are accorded "a presumption of

good faith," and a court "will not credit 'mere speculation that . . . uncovered documents may

exist' as a basis for finding an agency's search inadequate." *Kowal*, 107 F.4th at 1027 (alteration

omitted) (quoting *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "In the

absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an

agency's compliance with FOIA." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222

(D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).

Defendants' search amply meets this standard. The FBI submitted a 61-page affidavit by

the FBI's Section Chief of the Record/Information Dissemination Section, Information

Management Division, describing in detail: (a) his familiarity with the procedures followed by

the FBI in responding to FOIA requests, Seidel Decl. ¶ 3; (b) his specific knowledge of how the

FBI handled plaintiff's FOIA request, *id.* ¶ 3; (c) how the CRS is organized and the

comprehensive set of records, information, and data it contains, *id.* ¶¶ 12-15; (d) the agency's

basis for believing that the records requested would be stored in CRS and accessed via a search

in Sentinel, *see id.* ¶ 12, 19; (e) that the FBI searched CRS via Sentinel with the broad term "Alejandro Mayorkas," the third party for whom plaintiff is seeking certain information, with a search cut-off date of September 22, 2023, which was coterminous with the FBI's initial search for records, *id.* ¶ 20; and (f) that the FBI identified responsive records, *see id.* Furthermore, the declarant averred that "there is no indication from the CRS search efforts that responsive records would reside in any other FBI system or location." *Id.* ¶ 21.

Plaintiff challenges the adequacy of the search for two specific reasons. First, plaintiff complains that the FBI did not search any email accounts "that would potentially contain records responsive to the request," Pl.'s Opp'n at 5, including email accounts of the Office of Congressional Affairs, *id.* Second, plaintiff claims the request was for "four sets of records spanning multiple sessions of Congress . . . and there is no indication . . . that the FBI ever looked for anything other than the most recent one." *Id.*

Plaintiff's first argument focuses on whether email accounts were searched, but the request itself did not seek communications of any kind, let alone email communications, regarding the documents that were expressly requested. Specifically, the request at issue was only for "records and versions of the FBI background investigation, Form SF-86 and any supporting security clearance documentation . . . as produced to or shared with Senate Homeland Security and Governmental Affairs majority staff or any other congressional staff" related to Secretary Mayorkas' four nominations to different government positions. Defs.' SUMF ¶ 6. In other words, this request sought only documents, and versions thereof, of FBI reports, security clearance forms or documentation related to the specific cabinet secretary's nominations for federal government positions, that were produced to or shared with Congress— *not emails* with Congress. The background investigation documents, and versions thereof,

would have been uncovered in a search of CRS.  Seidel Decl. ¶¶ 13, 15, 19-20, 45-46.

Defendants rightfully relied on the "four corners of the request for leads to the location of responsive documents," *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996), and the request itself simply does not reasonably suggest that plaintiff sought emails.  *See Brown v. FBI*, No. 21-cv-1639 (RBW), 2023 WL 5333210, at *4 (D.D.C. Aug. 18, 2023) (agreeing that even a "liberal reading" of the plaintiff's FOIA request did not support his assertion that the defendant was required to search a different location of records based on the scope of his request), *appeal docketed*, No. 23-5244 (D.C. Cir. Oct. 25, 2023); *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013) ("Agencies . . . are . . . [not] 'required to divine a requester's intent.'" (quoting *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003))).  Moreover, nothing in defendants' search, *see* Seidel Decl. ¶ 21, indicated "a lead so apparent that the Bureau [could not] in good faith fail to pursue it." *Kowalczyk*, 73 F.3d at 389.

In any event, the search of CRS uncovered emails between FBI personnel, between FBI personnel and private citizens/corporations, between FBI personnel and other government agency personnel, and between FBI personnel and state and local law enforcement agencies—all in connection with its background investigations because such records are "located within . . . background investigation files" and accessed by a Sentinel search of CRS.  Seidel Decl. ¶¶ 12-21, 46.  Given the plain terms of the request at issue, as well as the thoroughness of the search conducted using keywords not challenged by plaintiff, the search conducted is not inadequate for not precisely targeting FBI's email communications systems, including the Congressional Affairs Office component.

Plaintiff's second argument speculates that defendants searched for records only as to the cabinet secretary's nomination for his current position. This is plainly wrong and ignores defendants' search protocol. Specifically, the FBI ran a search across CRS for "Alejandro Mayorkas" without any start date and with an end date of September 22, 2023, when the U.S. Senate confirmed Secretary Mayorkas' nomination. Seidel Decl. ¶ 20. The search was not contingent on "sessions of Congress," Pl.'s Opp'n at 5, and would have necessarily captured information from inception of "Alejandro Mayorkas" in the CRS database, Seidel Decl. ¶¶ 13-15, 20-21.

The FBI's declaration provides "the type of 'necessary details . . . about the scope or methods of the search[] conducted,'" *Lamb v. Millennium Challenge Corp.*, 334 F. Supp. 3d 204, 212 (D.D.C. 2018) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91-92 (D.D.C. 2009)), and describes a protocol that was reasonably calibrated "to uncover all relevant documents," *Elliot v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1233, 1351 (D.C. Cir. 1983)). That is all FOIA requires of defendants to carry their burden. *See e.g.*, *Watkins L. & Advoc., PLLC v. U.S. Dep't of Justice*, 78 F.4th 436, 444 (D.C. Cir. 2023) (affirming summary judgment regarding the adequacy of defendant's search because "[t]he . . . declarations 'describe[] with particularity the files that were searched, the manner in which they were searched, and the results of the search," and show that the agency made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested'" (first quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994), and then quoting *In re Clinton*, 970 F.3d 357, 367 (D.C. Cir. 2020))). Plaintiff, on the other hand, has failed "to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to

the adequacy of the search." *Pinson v. U.S. Dep't of Justice*, 177 F. Supp. 3d 56, 80 (quoting

*Morley*, 508 F.3d at 1116).  As such, defendants are entitled to summary judgment on the

adequacy of their search for responsive records.

### B. Categorical Withholding of Responsive Records Was Proper Under Exemptions 6 and 7(C).

After reviewing the records identified by the search protocol, the FBI categorically

withheld the documents under FOIA Exemptions 6 and 7(C).  Defs.' Mem. at 9-22.  Defendants'

categorical approach to withholding documents under Exemptions 6 and 7(C) is both logical and

appropriate.  As the Supreme Court has explained, "[o]ur cases provide support for the

proposition that categorical decisions may be appropriate and individual circumstances

disregarded when a case fits into a genus in which the balance characteristically tips in one

direction."  *U.S. Dep't of Justice v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 776

(1989); *see also FTC v. Grolier, Inc.*, 462 U.S. 19, 27-28 (1983) ("Such [privileged, work-

product] materials are thus not 'routinely' or 'normally' available to parties in litigation and

hence are exempt under Exemption 5.  This result, by establishing a discrete category of exempt

information, implements the congressional intent to provide 'workable' rules." (citation

omitted)); *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)

("[R]ules exempting certain categories of records from disclosure are sometimes permitted, even

encouraged, as a workable manner of meeting FOIA obligations."); *Safecard Servs.*, 926 F.2d at

1206 (holding "categorically that, unless access to the names and addresses of private individuals

appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute

compelling evidence that the agency is engaged in illegal activity, such information is exempt

from disclosure"); *Jurdi v. United States*, 485 F. Supp. 3d 83, 92-97 (D.D.C. 2020) (upholding

agencies' categorical withholding of law enforcement documents regarding third party under

Exemption 7(C)); *Boyd v. Exec. Off. for U.S. Att'ys*, 87 F. Supp. 3d 58, 72-82 (D.D.C. 2015) (upholding agencies' categorical withholding of law enforcement documents regarding third parties under Exemptions 6 and 7(C)); *Pub. Invs. Arb. Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 71-72 (D.D.C. 2013) (sustaining agency's categorical withholding of material under Exemption 8); *Graff v. FBI*, 822 F. Supp. 2d 23, 31 (D.D.C. 2011) ("[R]ules exempting whole groups of records from disclosure are not only permitted, but should be encouraged as a means of enabling agencies to meet their formidable FOIA obligations in a timely fashion."); *see also Schultz v. FBI*, 63 F. Supp. 3d 1183, 1189 (E.D. Cal. 2014) (recognizing that categorical exemptions "serve the interest of preservation of judicial economy by relieving the court of the obligation of carrying out a case-by-case examination of documents where the FOIA request seeks production of a narrow category of documents whose production would predictably or inevitably result in an unwarranted invasion of the privacy interests of the third-party objects of the request"). To support such a categorical withholding, the "range of circumstances included in the" exempt "category" must "characteristically support an inference that the statutory requirements for exemption are satisfied." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1150 (D.C. Cir. 2015) (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice ("CREW I")*, 746 F.3d 1082, 1088-89 (D.C. Cir. 2014)).

The defendants' categorical approach here is justified. FOIA's Exemption 6 "protects 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Reps. Comm.*, 489 U.S. at 755 (quoting 5 U.S.C. § 552(b)(6)). Exemption 7(C) "excludes records or information compiled for law enforcement purposes, 'but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *Id.* at 756 (alternations in

original) (quoting 5 U.S.C. § 552(b)(7)(C)). While similar, "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6." *Id.* The breadth of Exemption 7(C)'s privacy language compared to Exemption 6 means that the former "establishes a lower bar for withholding material." *ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011); *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 165-66 (2004) (noting that Exemption 6's phrase "clearly unwarranted" creates a higher bar for the agency to withhold responsive material compared to Exemption 7(C)). As a result, when the records and information an agency seeks to withhold were "'compiled for law enforcement purposes,' the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to separately consider the higher bar of Exemption 6." *Blixseth v. U.S. Immigs. & Customs Enf.*, No. 19-cv-1292 (JEB), 2020 WL 210732, at *5 (D.D.C. Jan. 14, 2020) (quoting *Braga v. FBI*, 910 F. Supp. 2d 258, 266-67 (D.D.C. 2012)); *see also Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) ("If the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."); *Hawkins v. FBI*, No. 20-cv-1483 (BAH), 2022 WL 905577, at * 6 (D.D.C. March 2, 2022) ("Where 'all information that would fall within the scope of one asserted exemption would also be immune from disclosure under another asserted exemption,' there is 'no need' to consider both." (quoting *Roth*, 462 F.3d at 1173) (alterations omitted)).

To fall within Exemption 7(C)'s more protective ambit, a record must "be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water*

*Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014); *see* 5 U.S.C. § 552(b)(7). If that

requirement is satisfied the agency must then show that "the [asserted] privacy interest . . .

categorically outweighs any public interest in disclosure." *Bartko v. U.S. Dep't of Justice*, 898

F.3d 51, 64 (D.C. Cir. 2018). This balancing act requires, on one hand, that "[t]he privacy

interest at stake belongs to the individual," *Hawkins*, 2022 WL 905577, at *6, and, on the other

hand, acknowledges that "the only public interest . . . is one that focuses on 'the citizens' right to

be informed about what their government is up to,'" *Davis v. U.S. Dep't of Justice*, 968 F.2d

1276, 1282 (D.C. Cir. 1992) (quoting *Reps. Comm.*, 489 U.S. at 773). The requester "must (1)

'show that the public interest sought to be advanced is a significant one, an interest more specific

than having the information for its own sake,' and (2) 'show the information is likely to advance

that interest.'" *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir 2007)

(quoting *Favish*, 541 U.S. at 172). An alleged public interest in shining light on government

wrongdoing cannot rest on "a bare suspicion in order to obtain disclosure. Rather, the requester

must produce evidence that would warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred." *Favish*, 541 U.S. at 174.

Plaintiff does not dispute that the withheld records at issue here meet 7(C)'s threshold

requirement that defendants created them for law enforcement purposes. Indeed, "[t]he principal

purpose of a background investigation is to ensure that a prospective employee has not broken

the law or engaged in other conduct making her ineligible for the position." *Mittleman v. Off. of

Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996); *see also Lamb*, 334 F. Supp. 3d at 216 ("[A]

file 'compiled' for purposes of conducting a background check clears the 'compiled-for-law-

enforcement-purposes' requirement of Exemption 7." (quoting *Mittleman*, 76 F.3d at 1243)). As

the FBI declarant attests, all the withheld documents relate to the background investigations the FBI conducted for Secretary Mayorkas.  Seidel Decl. ¶ 25.

All that remains to be decided, then, is whether the privacy interests at stake—which are the privacy interests of Secretary Mayorkas and the individuals who supplied information to the FBI in the relevant background investigations—overall tip in a direction that outweighs plaintiff's allegation that the release of the documents would shed light on "serious allegations that the background check process has become broken and politicized" because "the FBI has repeatedly violated the Paperwork Reduction Act, the Privacy Act, and the FBI's own Manual of Investigative Operations and Guidelines in its conduct of background investigations."  Pl.'s Opp'n at 11-12.  These important interests that must be balanced are addressed next.

### 1.  *Privacy Interests*

When a FOIA request implicates personal data on third-party individuals in law enforcement records, "the privacy interest . . . is at its apex."  *Reps. Comm.*, 489 U.S. at 780. The background investigations into Secretary Mayorkas resulted in the collection by the FBI of information, documents and data based on "interviews of the appointee, [his] neighbors, references, and employers/supervisors/coworkers; searches and results of government agency database records checks; and medical and financial records detailing every aspect of the past health and financial history of Alejandro Mayorkas."  Seidel Decl. ¶ 25.  These records include "a wealth of personally identifying information, as well as intimate details about the subject of the investigation, [his] families, personal relationships, and associates" and "could also reveal past criminal acts or behaviors occurring after the age of eighteen that are no longer part of the public record."  *Id.* ¶ 26.  Defendants weighed the public interest in revealing this information "in each instance [where] information was withheld pursuant to Exemptions 6 and 7(C)," and

"the FBI determined that Mr. Mayorkas' privacy interests outweighed any public interest in disclosure." *Id.* ¶ 38.

In contrast to cases where agencies categorically decline to run a search because "a search for records 'pertaining to' specific individuals would" return results on "information that [the D.C. Circuit] concluded is protected by Exemption 7(C)," *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (internal citation omitted), the FBI conducted a search for records using the keyword "Alejandro Mayorkas" in CRS, Seidel Decl. ¶ 20. The FBI declarant provided a detailed chart outlining the functional categories and subcategories of responsive documents, types of documents, and descriptions of the documents at a level of detail "that would not undermine Mr. Mayorkas' privacy interests." *Id.* ¶¶ 45-46 (noting this procedure was in accord with same process approved in a FOIA case seeking law enforcement records in *Bevis v. Department of State*, 801 F.2d 1386, 1388 (D.C. Cir. 1986)). For each functional category, the FBI declarant further described the anticipated harms that could reasonably result from disclosure, such as "embarrassment, false inferences, degradation of the perception of third parties' personal character, revelation of personal details about his life he may not want publicly disclosed, and potentially harassing inquiries directed at third parties." *Id.* ¶ 45. "After extensive review of the documents," *id*. ¶ 113, defendants concluded the responsive records were subject to categorical withholding, *id.* ¶¶ 34-48.

The privacy interests in records related to an FBI background check are significant. Indeed, "it is difficult to contemplate an agency record with a more pronounced privacy interest than a[] [record] produced as part of a comprehensive background check." *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 44 (D.D.C. 2017). "[T]he Supreme Court has made clear that requests for such third party [law enforcement] information are strongly disfavored."

*Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) (citing *Reps. Comm.*, 489 U.S. at 774). Each record responsive to plaintiff's request implicates law enforcement information regarding a third party, whether Secretary Mayorkas himself or an individual interviewed by the FBI during an investigation. Thus, "as a categorical matter" disclosure "can reasonably be expected to invade [these] citizen[s]'[] privacy." *Reps. Comm.*, 489 U.S. at 780.

Plaintiff does not contest the privacy interests inherent in the documents responsive to their request, instead positing, correctly, that "a privacy interest alone is not enough to prevent disclosure." Pl.'s Opp'n at 10-11. In assessing the strength of Secretary Mayorkas' privacy interest, in particular, plaintiff urges that this interest be discounted because, first, "much of the file pertains to his exercise of statutory duties and authority as an agent of the United States in prior roles," and, second, that his role as a "public figure" limits his privacy rights under FOIA. *Id.* Plaintiff's first argument finds no support in the record and does not undermine defendants' description of the records as consisting of detailed personal information. Seidel Decl. ¶¶ 25-26, 45-46. The second argument finds support in the adage that "public officials" "may have a somewhat diminished privacy interest [in the Exemption 7(C) balancing analysis,]" but "do not surrender all rights to personal privacy when they accept a public appointment." *CREW I*, 746 F.3d at 1092 (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C. Cir. 1996)). The case forming this bedrock principle, *Fund for Constitutional Government v. National Archives and Records Services,* held that even if a case implicates a public official, "the degree of intrusion occasioned by disclosure is necessarily dependent upon the character of the information in question." 656 F.2d 856, 865 (D.C. Cir. 1981). The information requested here includes intimate details of a third-party's life contained within background investigation files. If being a public official weakens one's privacy interest in certain information under the balancing required in the

Exemption 7(C) analysis, "[t]his is not . . . such a case."  *Id.*; *see also CREW I*, 746 F.3d at 123 ("[Congressman's] privacy interest in the contents of the investigative files is not insubstantial.").

Plaintiff does not address the privacy interests of the individuals the FBI interviewed in its background investigations into Secretary Mayorkas.  As part of the FBI's investigations, agents interviewed Secretary Mayorkas' neighbors, references, employers, supervisors, and coworkers.  Seidel Decl. ¶ 25.  As the FBI's declarant makes clear, producing the responsive documents would not only violate the privacy rights of Secretary Mayorkas but also "the privacy interest of the many other individuals who are mentioned in" the documents, including the interviewees whose statements "from the basis for defining the personal character and qualifications of" Secretary Mayorkas.  *Id.*  ¶¶ 41, 45.  Revealing information provided by persons interviewed "would reveal the identities of the interview participants."  *Id.* ¶ 45.  Such revelation would "carr[y] an extremely negative connotation," *id.* ¶ 78, and potentially expose the third-party individuals to "harassment or embarrassment, undue public attention, and/or unwanted inquiries for information related to their assistance" as well as "legal or economic detriment, negative professional and social repercussions, possible physical harm, or even death," *id.* ¶ 79.  With respect to such confidential sources, releasing identifying information would have "a chilling effect on the activities and cooperation of other sources. Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws."  *Id.* ¶ 88.

These real-world articulated concerns support finding that these individuals interviewed as part of the background investigations into Secretary Mayorkas have a strong privacy interest

in not being associated with FBI investigations. *See Nation Mag.*, 71 F.3d at 894 (collecting authority and holding that individuals have a privacy interest when they are "mentioned in investigatory files" or identified as someone who "provided information during the course of an investigation"); *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (collecting cases and noting that the D.C. Circuit's "decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records"). These privacy interests are "obvious," *Nation Mag.*, 71 F.3d at 894, and supports categorical treatment in these circumstances. *See Schrecker*, 349 F.3d at 661 ("[The D.C. Circuit] adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" (quoting *Safecard Servs.*, 926 F.2d at 1206)).

## 2. *Public Interest*

"[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994) (quoting *Reps. Comm.*, 489 U.S. at 773). "[W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties," "bare suspicion" will not permit "disclosure." *Favish*, 541 U.S. at 174. Instead, the requester must come forward with evidence that would lead a "reasonable person" to believe that the alleged government misconduct might have occurred. *Id.* This is a "demanding . . . standard." *Blackwell*, 646 F.3d at 41.

Plaintiff proffers four arguments to overcome the asserted privacy interests of Secretary Mayorkas and other persons interviewed as part of the FBI's background investigations but none is persuasive. First, plaintiff believes the records will support "serious allegations that the background check process has become broken and politicized" and show that "the FBI has repeatedly violated the Paperwork Reduction Act, the Privacy Act, and the FBI's own Manual of Investigative Operations and Guidelines in its conduct of background investigations." Pl.'s Opp'n at 11-12. This argument fails to rise above "bare suspicion." *Favish*, 541 U.S. at 174. As support for these allegations against the FBI, plaintiff points only to a letter echoing the same themes that Gene Hamilton, plaintiff's own Vice President and General Counsel, wrote to a member of Congress. Pl.'s Opp'n at 12-13, 12 n.8. As such, no evidence in the record, other than plaintiff's unsworn say-so, has been presented to lead a reasonable person to believe that any alleged wrongdoing occurred. *See Blackwell*, 646 F.3d at 41 (finding that plaintiff failed to meet "the demanding *Favish* standard" by submitting an affidavit that lacked "any substantiation").

Second, plaintiff argues that, given Secretary Mayorkas' professional history with prior public service positions, "background investigations of Mr. Mayorkas necessarily include information about his public service and not merely personal details, information that would shed light on what the government was up to during those periods." Pl.'s Opp'n at 12. Defendants argue that "the very nature of the underlying documents is personal, private information," and that they balanced this privacy interest against "the public's right to know how agencies carry out 'their . . . statutory duties,' not its right to learn what the subject of law-enforcement investigations are 'up to'." Defs.' Reply Supp. Mot. Summ. J. ("Defs.' Reply") at 7-8 (quoting *CREW I*, 746 F.3d at 1093), ECF No. 21. Plaintiff's argument ignores the detailed declaration

attesting to the types and descriptions of records the FBI reviewed in its background investigation into Secretary Mayorkas—none of which are described as including information related to how the agencies previously led by Secretary Mayorkas carried out their statutory duties. *See* Seidel Decl. ¶¶ 25, 45-46. Furthermore, plaintiff does not explain how an *individual's* background investigation files reflect what the *government* agencies Secretary Mayorkas led were "up to." *Reps. Comm.* at 773. Plaintiff's "curiosity resembles an interest in 'having the information for its own sake,' which is insufficient" to overcome the third-party privacy interests at stake in this case. *Heritage Found. v. U.S. Dep't of Justice*, No. 23-cv-1148 (JEB), 2024 WL 1856418, at *11 (D.D.C. April 29, 2024) (quoting *Boyd*, 475 F.3d at 387).

Third, plaintiff argues that "the requested records likely contain information about [Secretary Mayorkas'] intervention as the Director of [USCIS] in multiple EB-5 adjudications, which led to the Inspector General finding an 'appearance of favoritism and special access.'" Pl.'s Opp'n at 12-13. This argument appears predicated on the assumption that a requested background investigation of a potential nominee is an opportunity for the FBI to conduct a re-do and re-analysis of any prior investigation by other enforcement agencies of the individual. That assumption has no basis in the record. To the contrary, when such a prior investigation's findings are public and thus may be taken into account in a decision whether to proceed with a nomination of the person to a government position, there is less reason for reliance on the FBI's background investigation to uncover the information and, consequently, more reason for the FBI to skip over that already public aspect of the potential nominee's background.

Plaintiff's reliance on *Kimberlin v. Department of Justice*, 139 F.3d 944 (D.C. Cir. 1998), and *Stern v. Federal Bureau of Investigation*, 737 F.2d 84, (D.C. Cir. 1984), for the proposition that the seriousness of the misconduct should be weighed in the balancing of whether documents

should be released, are entirely inapposite here.  Each of those cases involved FOIA requests for records related to investigations of individuals for alleged impropriety.  *See Kimberlin*, 139 F.3d at 947-48; *Stern*, 737 F.2d at 91-93.  Here, plaintiff is not requesting documents related directly to the Inspector General's investigation into Secretary Mayorkas, where the existence of responsive records would make sense.  Speculating that information about such an investigation would be part of the FBI's background investigation is just that: purely speculative.  *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) ("A [FOIA] requestor does not have a right to have his case decided on a hypothetical set of facts that strengthen his position; rather, he must see his case succeed or fail on the facts before the court.").

Fourth, and related to the third argument, plaintiff contends that the documents are necessary to determine whether the FBI "fully investigated" Secretary Mayorkas relating to his nominations.  Pl.'s Opp'n at 12-13.  To be sure, "the public may have an interest in whether the FBI 'pulled its punches'" when conducting Secretary Mayorkas' background investigations. *Prop. of the People v. U.S. Dep't of Justice*, 310 F. Supp. 3d 57, 70 (D.D.C. 2018) (quoting *CREW I*, 746 F.3d at 1093).  Plaintiff posits "it may be even more noteworthy if the FBI did *not* investigate his past ethical misconduct," Pl.'s Opp'n at 13, because "the FBI could have potentially improved Mr. Mayorkas's prospects for nomination and confirmation by not fully investigating the derogatory information relating to his documented ethical misconduct," *id.*; *see id*. at 14 ("[c]onsider also whether the FBI fully investigated Mr. Mayorkas's conflicts of interest relating to his nomination to be Secretary").  These allegations are, at worst, salacious, and at best, speculative.  Such threadbare "what-ifs" are not sufficient for plaintiff to carry its burden, since plaintiff "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 175.  "Were this

not the case, a requester could go on a fishing expedition for FBI records for any celebrity," politician, or appointee. *Prop. of the People*, 310 F. Supp. 3d at 70; *see also Favish*, 541 U.S. at 175 ("Allegations of government misconduct are easy to allege and hard to disprove." (citation and internal quotation marks omitted)). Plaintiff provides no evidence that the FBI "pulled its punches" when investigating Secretary Mayorkas, and "without . . . a 'meaningful evidentiary showing,' the Court therefore sees no public interest on [this] ground." *Prop. of the People*, 310 F. Supp. 3d at 70 (quoting *Favish*, 541 U.S. at 175). [7]

### 3. *Balancing*

FOIA "is premised on the notion that an informed citizenry is 'vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" *Judicial Watch, Inc.*, 282 F. Supp. 3d at 41 (quoting *NLRB v. Robbins Tire & Co.*, 437 U.S. 214, 242 (1978)). "Yet Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information." *Abramson*, 456 U.S. at 621. In this case, the balance of "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information," *Davis*, 968 F.2d at 1281, "characteristically tips," *Reps. Comm.*, 489 U.S. at 776, toward nondisclosure.

As described above, the personal privacy stakes of Secretary Mayorkas and individuals interviewed by the FBI as part of the background investigations are at their zenith. *See e.g.*, *ACLU*, 655 F.3d 1 at 8 ("The [Supreme] Court held 'as a categorical matter' that 'a third party's request for law enforcement records or information about a private citizen can reasonably be

---

[7]     Plaintiff suggests that by invoking Exemption 7(C), defendants have somehow improperly shifted the burden, arguing that "the Defendants do not even attempt to dispute the public interest in Mr. Mayorkas's background investigation (arguing instead the Plaintiff did not provide enough justification in its complaint)." Pl.'s Opp'n at 15. Yet, once defendants "properly asserted a privacy interest," the law clearly places on plaintiff the burden to "establish that (1) the public interest is a significant one; and (2) the information is likely to advance that interest." *Romero-Circle v. U.S. Dep't of Justice*, No. 05-cv-2303 (RJL), 2006 WL 3361747, at *5 (D.D.C. Nov. 20, 2006) (citing *Favish*, 541 U.S. at 172).

expected to invade that citizen's privacy.'" (quoting *Reps. Comm.*, 489 U.S. at 780)); *Judicial Watch, Inc.*, 282 F. Supp. 3d at 44-45 (holding that "the privacy interest at stake" regarding information gathered in furtherance of an FBI background check "is a weighty one"); *Archibald v. U.S. Dep't of Justice*, 950 F. Supp. 2d 80, 88-89 (D.D.C. 2013) ("When the subject of [a record] is a private citizen and when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest protected by Exemption 7(C) is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir." (alterations in original) (quoting *Reps. Comm.*, 489 U.S. at 780)).  The records and information defendants compiled as part of the background investigations of Secretary Mayorkas include numerous interviews, searches and results of government agency database records, and medical and financial records detailing every aspect of his past health and financial history.  Seidel Decl. ¶ 25-26.  The purpose of the background investigations into Secretary Mayorkas sought to determine if he "was suitable for . . . high-level national security position[s] and to access sensitive law enforcement or classified information."  *Id.* ¶ 35.  "It is difficult to contemplate . . . agency record[s] with a more pronounced privacy interest," *Judicial Watch, Inc.,* 282 F. Supp. 3d at 44, than files, records, data, and information identified during, or created for, an FBI background investigation.

On the other side of the scale, plaintiff has failed to articulate a public interest worthy of overriding the privacy interests Exemption 7(C) protects.  Plaintiff's arguments with respect to Secretary Mayorkas, Pl.'s Opp'n at 11-13, would reveal "little or nothing about an agency's own conduct," and thus cannot "overcome [his] private interest[s]."  *Jurdi*, 485 F. Supp. 3d at 93 (quoting *Reps. Comm.*, 489 U.S. at 773).  That leaves plaintiff's public policy justification on life support.  To the extent plaintiff alleges that the documents would somehow reveal FBI violations

of the Paperwork Reduction Act, the Privacy Act, and the FBI's own Manual of Investigative

Operations and Guidelines in conducting background investigations of Secretary Mayorkas, Pl.'s

Opp'n at 13-15, the record is bare of any meaningful evidence that would meet the "demanding

*Favish* standard." *Blackwell*, 646 F.3d at 41. Thus, the categorical withholding of documents

falling within FC 1 and FC 2 "characteristically tips," *Reporters Comm.*, 489 U.S at 776, towards

nondisclosure. *See Archibald*, 950 F. Supp. 2d at 88-89 (finding categorical withholding by FBI

of records related to a 2008 background check of then-presidential candidate Barack Obama

proper, discounting plaintiff's asserted general public policy interest as "not the *type* of public

interest required to overcome a privacy interest under FOIA").

Public disclosure of raw information relayed to the FBI as part of a background

investigation could be taken out of context and could, absent verification, corroboration, or

further law enforcement scrutiny and evaluation, amount to no more than mere rumor or gossip.

Recognizing this, Congress permitted agencies to withhold records that were "compiled for law

enforcement purposes," 5 U.S.C. § 552(b)(7), and "could reasonably be expected to constitute an

unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C). The FBI's declarant

provides a detailed categorization of documents that are responsive to plaintiff's request, Seidel

Decl. ¶¶ 44-48, and an attestation that "each piece of information was scrutinized to determine

the nature and strength of the privacy interest of every individual whose name and/or identifying

information appears in the documents at issue" and "balanced against the public's interest in

disclosure." Seidel Decl. ¶ 35. That balance resulted in the categorical withholding of

documents falling within FC 1 and FC 2. Plaintiff has failed to identify, or substantiate, a public

interest warranting the release this intimate and private information.  As such, defendants properly categorically withheld these records under Exemption 7(c).[8]

## C.  Segregable Information.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Documents contain inextricably intertwined information when, after redacting exempt information, the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005) (holding that an agency did not need to produce documents that contained "isolated words or phrases" that were made "meaningless" by redacting the exempt information); *Toursi v. U.S. Dep't of Justice*, 78 F. Supp. 3d 332, 350 (D.D.C. 2015) ("It is settled law . . . that an agency need not segregate and disclose 'disjointed words, phrases, or even sentences which taken separately or together have minimal or no informational content.'" (quoting *Schoenman v. FBI*, 763 F. Supp. 3d 173, 202 (D.D.C. 2011)).  In making the determination, a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated."  *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).

---

[8]     Plaintiff complains about an inability to challenge exemptions applied to individual documents because defendants "declined to produce a *Vaughn* index."  Pl.'s Opp'n at 15.  At the outset, a *Vaughn* index is not required if an agency provides an adequate affidavit to evaluate application of a nondisclosure exemption.  *See Pub. Invs. Arb. Bar Ass'n*, 930 F. Supp. 2d at 70 ("[A]n agency may 'submit other measures in combination with *or in lieu* of the index itself.'" (emphasis in original) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006))); *id.* ("An agency's submissions suffice 'so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege.'" (quoting *Judicial Watch, Inc.*, 449 F.3d 141 at 146)).  Here, the FBI declarant provides detailed descriptions of both the underlying documents as well as the functional categories the documents fall within, Seidel Decl.  ¶¶ 45-49, along with "a relatively detailed justification, specifically identif[ying] the reasons why a particular exemption is relevant and correlat[ing] those claims with the particular part of a withheld document to which they apply," *Judicial Watch, Inc.* 449 F.3d 141 at 146 (alterations in original) (quoting *Mead Data Cent.*, 56 F.2d at 251).  In light of these details, plaintiff's complaint about not being given a *Vaughn* index elevates form over substance.

As part of its segregability analysis, defendants processed "all documents responsive" to plaintiff's request, Seidel Decl. ¶¶ 110-111, and identified 115 pages of documents within FC 3 which were produced, with limited non-objectionable redactions, *id*. ¶ 111. "After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information." *Id.* ¶ 113. In making this determination, which dovetails into the segregability analysis, the FBI declarant attested that "[p]roviding an actual accounting of the information located within the documents, including the page count of the collected records, in light of the categorical exemption pursuant to FOIA Exemptions . . . 6, and 7(C), would reveal privileged information." *Id.* ¶ 46.

Defendants withheld the documents falling within FC 1 and FC 2 *in toto*, and attempting to segregate information would "compromise[e] the purpose of the FOIA exemptions." *Blixseth*, 2020 WL 210732, at *7. Other than repeating the already rejected arguments that defendants improperly withheld the documents within FC 1 and FC 2 categorically, plaintiff raises no other challenge to undercut the attestations made by the FBI's declarant nor the "presumption that [the agencies] complied with their obligation to disclose any reasonably segregable [material].'" *Boyd*, 475 F.3d at 391. [9] The fact that defendants released segregated information covered by FC

---

[9]  Plaintiff points to the FBI's disclosure, in response to a FOIA request in another case, of a heavily redacted SF-86 form for former Attorney General Jeffrey Sessions to argue that additional information may be segregated and disclosed.  Pl.'s Opp'n at 6 nn.3-4 (citing *Am. Oversight v. Dep't of Justice*, 375 F. Supp. 3d 50 (D.D.C. 2019)); Pl.'s SDMF ¶¶ 74, 90, 141.  The circumstances in *Am. Oversight* are distinguishable from the instant case in critical ways, however.  In that case, the plaintiff sought disclosure of "Section 20B.6 of the SF-86 form," relating to Sessions' contacts with Russian nationals and, while the request was pending, DOJ made a public, official statement about the contents of Sessions' SF-86 form on that issue, *id*. at 66, and acknowledged the issue "touched on matters 'of widespread and exceptional media interest in which there exist[ed] possible questions about the government's integrity which affect[ed] public confidence,'" *id*. at 68 (citation omitted).  Thus, the *Am. Oversight* Court was "cognizant that the Department 'voluntarily' released the portion of the SF-86 at issue and that the Court never held that the release was required by FOIA."  *Id*.  By contrast here, no agency has publicly released portions of the requested background investigation files, in whole or in part, nor has acknowledged public interest in disclosure of the contents of those background investigation that overrides any third-party privacy interest.

3 only bolsters a finding that defendants "did segregate non-exempt information . . . withheld under [the] FOIA exemptions." *Id.*

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted because the search conducted was adequate and records were properly categorically withheld pursuant to Exemptions 6 and 7(C).

An Order consistent with this Memorandum Opinion will be entered contemporaneously.


Date: October 29, 2024

_____
**BERYL A. HOWELL**
United States District Judge